Matter of Ian G. v Crystal F. (2019 NY Slip Op 05356)





Matter of Ian G. v Crystal F.


2019 NY Slip Op 05356


Decided on July 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

526606

[*1]In the Matter of IAN G., Respondent,
v
CRYSTAL F., Appellant. (And Another Related Proceeding.)

Calendar Date: May 30, 2019

Before: Clark, J.P., Mulvey, Devine, Aarons and Rumsey, JJ.


Sandra M. Colatosti, Albany, for appellant.
Christopher Hammond, Cooperstown, for respondent.
Pamela Gee, Big Flats, attorney for the child.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from an order of the Family Court of Chemung County (Baker, J.), entered April 13, 2018, which, among other things, granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a son (born in 2013). The mother had primary physical custody of the child with the father having visitation. The parties thereafter commenced competing modification proceedings and, as relevant here, the father sought "full custody" of the child. Following a hearing, Family Court (Hayden, J.), in a December 2015 order, awarded the parties joint legal custody with each party having physical custody of the child on alternating weeks. On the mother's appeal from the December 2015 order, we held that, although the father satisfied his initial burden of demonstrating a change in circumstances, "the scanty record . . . [was] insufficient to permit this Court to conclude that the custodial arrangement fashioned by Family Court [was] in the child's best interests" (Matter of Crystal F. v Ian G., 145 AD3d 1379, 1382 [2016]). We therefore remitted the matter for a new hearing.
Two months after our decision was issued, the father filed another modification petition in February 2017 on the basis that the mother was being investigated for failing to supervise the child and had temporarily lost custody of her daughter, who has a different father. A consolidated fact-finding hearing was held, after which Family Court (Baker, J.), by order entered in April 2018, among other things, awarded the father sole custody of the child with parenting time to the mother. The court noted in the April 2018 order that its findings of fact would be set forth later in a separate written decision, which was ultimately issued in October 2018. The mother appeals from the April 2018 order.
The mother contends that the father failed to meet his threshold burden of establishing a change in circumstances. We disagree. In the prior appeal, we already determined that the father demonstrated the requisite change in circumstances (id. at 1381-1382) and remitted the matter for the purpose of determining what custodial arrangement served the best interests of the child. Accordingly, it was not necessary for the father to first demonstrate a change in circumstances.
Regarding the best interests of the child, the record discloses that the mother acted unruly and used profane language in the presence of other children and parents at the school attended by the child and her daughter. The mother would record videos of the father at the school and was asked more than once to stop per the school's policy. The mother, however, would refuse and became combative. On one instance, the mother enlisted her daughter to make a video recording. A teacher testified at the fact-finding hearing that the mother was "volatile" in front of the children and that the mother had posted negative comments about her on social media. The teacher also testified that she never had trouble with the father. The mother was eventually asked not to be on the school premises, and multiple witnesses testified that, after the mother stopped dropping off her daughter and the child at school, they noticed a positive change in the child's behavior.
The record also discloses that, while in the mother's house, the child and the mother's daughter played what they called "the private parts game," where they "suck[ed] and touch[ed] each other's private parts." Another witness testified that the mother did not seem concerned about this game. Although a hotline report about this incident was ultimately determined to be unfounded, multiple witnesses testified that they had heard about this game played by the children. Furthermore, a safety plan was created to ensure the children did not continue with the inappropriate touching but, on one instance, it was not followed at the mother's house.
Evidence was also adduced to the effect that part of the mother's house did not have a roof and that there were piles of debris outside of it. Indeed, a code enforcement officer testified that he saw an accumulation of junk throughout the property and believed that it was not a safe place for children. The father testified that the child had his own room in a three-bedroom trailer that he shared with the child's grandmother and that the child's hygiene was regularly maintained. The father further stated that, on a typical day, he and the child would ride bicycles, go for walks and "[j]ust do father/son activities."
Regarding their relationship, the father testified that the mother sent him text messages containing pornography or harassing language. Even though the father asked the mother to stop doing so, she continued to text him. The father testified that the mother would come to his home uninvited and kick and smash the door demanding that the child come out and play with her daughter. The mother also fabricated reports to the police about him. The father also testified that he was unable to participate in a breakfast with the child because of the mother's actions. According to the father, he and the mother could not get along when it came to co-parenting.
Family Court found that the mother acted inappropriately at the child's school, that she did not adequately supervise the child at her home and that she did not have a safe house for the child. Conversely, the court found that "[t]he record . . . offer[ed] no similar concerns with respect to the [f]ather." Taking into account that the record demonstrates the inability of the parties to co-parent the child and deferring to the court's findings, we conclude that the court's determination to award sole custody of the child to the father was supported by a sound and substantial basis in the record and served the best interests of the child (see Matter of Smith v McMiller, 149 AD3d 1186, 1187-1188 [2017]; Matter of Jesse E. v Lucia F., 145 AD3d 1373, 1374-1375 [2016], lv denied 29 NY3d 905 [2017]; Matter of Jared CC. v Marcie DD., 138 AD3d 1168, 1169-1170 [2016]; Matter of Kayla Y. v Peter Z., 125 AD3d 1126, 1128 [2015]). To the extent that the mother disputes certain accounts as testified to by the father or other witnesses, we defer to the court's assessments of the witnesses' credibility (see Matter of Williams v Rolf, 144 AD3d 1409, 1413 [2016]). Accordingly, we see no basis to disturb the court's custody determination (see Matter of David ZZ. v Suzane A., 152 AD3d 880, 883 [2017]).
The mother also contends that Family Court erred by issuing a decision in October 2018 setting forth its findings of fact and conclusions of law after the April 2018 order granting the father's petitions was issued. We note that the April 2018 order provided that the court made its custody determination "having considered testimony and evidence . . . and having heard arguments from counsel." Although issuing a decision subsequent to the entry of a final custody order is not preferable, we find that such fact by itself does not compel reversal in this case.
Nor do we agree with the mother's contention that she was not put on notice that legal custody was at issue based upon the father's petition seeking "full custody" and the testimony at the hearing (see Matter of Vanita UU. v Mahender VV., 130 AD3d 1161, 1163 [2015], lv dismissed and denied 26 NY3d 998 [2015]). Furthermore, even if neither party had explicitly sought legal custody, it was incumbent upon the court to fashion a custodial arrangement that served the best interests of the child once, as was the case here, it determined that joint custody was no longer workable (see Matter of Scala v Parker, 304 AD2d 858, 860 [2003]). The mother's remaining assertion has been considered and is without merit.
Clark, J.P., Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.